No. 22-11133 (Related with Nos. 22-11143, 44, 45)\*

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al.
*Plaintiffs-Appellees,*

v.

LAUREL M. LEE, in her official capacity as Secretary of State of Florida, et al.
*Defendants-Appellants,*

NATIONAL REPUBLICAN SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL COMMITTEE,
*Intervenor-Defendants–Appellants.*

On Appeal from the United States District Court
for the Northern District of Florida, Nos. 4:21-cv-186 (Walker, C.J.)

# TIME-SENSITIVE MOTION FOR
# STAY PENDING APPEAL

Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690

*Lead Counsel for Secretary Lee*

Andy Bardos
GRAYROBINSON, P.A.
301 South Bronough Street, Ste. 600
Tallahassee, FL 32301
(850) 577-9090

*Lead Counsel for Supervisors Hays and Doyle*

Tyler R. Green
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

*Lead Counsel for RNC & NRSC*

Henry C. Whitaker
FLORIDA ATTORNEY
GENERAL OFFICE
PL-01 The Capitol
Tallahassee, FL 3300
(850) 414-3300

*Lead Counsel for Attorney General Moody*

---

\* Appellants filed notices of appeal in four district court cases that were consolidated for trial, so there are four appellate court dockets—22-11133, 22-11143, 22-11144, 22-1145. Only one of these dockets—22-111333—is currently open. This motion applies to all four.

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Appellants certify that the following have an interest in the outcome of this appeal:

1.  Adkins, Janet, *Defendant*
2.  Adubu, Nancy, *Attorney for Plaintiffs-Appellees*
3.  Advancement Project National Office, *Attorneys for Plaintiffs-Appellees*
4.  Aguilera, Cecilia, *Attorney for Plaintiffs-Appellees*
5.  Alachua County Attorney's Office, *Attorneys for Defendant*
6.  Andersen, Mark, *Defendant*
7.  Anderson, Christopher, *Defendant*
8.  Anderson, Shirley, *Defendant*
9.  Anstaett, David, *Attorney for Plaintiffs-Appellees*
10. Arnold & Porter, LLP, *Attorneys for Plaintiffs-Appellees*
11. Arnold, Melissa, *Defendant*
12. Arrington, Mary, *Defendant*
13. Bailey, Leslie, *Attorney for Plaintiffs-Appellees*
14. Baird, Maureen, *Defendant*
15. Baker McKenzie, LLP, *Attorney for Plaintiffs-Appellees*
16. Bardos, Andy, *Attorney for Defendants*
17. Barton, Kim, *Defendant*
18. Beasley, Bobby, *Defendant*
19. Begakis, Steven, *Attorney for Intervenor-Defendants-Appellants*
20. Bell, Daniel, *Chief Deputy Solicitor General of Florida*
21. Bellamy, Emma, *Attorney for Plaintiffs-Appellees*
22. Benda, Kyle, *Attorney for Defendant*
23. Bennett, Michael, *Defendant*
24. Bentley and Bruning PA, *Attorney for Defendant*
25. Bentley, Morgan, *Attorney for Defendant*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

26.  Bernstein, Daniel, *Attorney for Plaintiffs-Appellees*

27.  Bishop, Marty, *Defendant*

28.  Black Voters Matter Fund LLC, *Plaintiff-Appellee*

29.  Bledsoe, William, *Attorney for Defendant*

30.  Branch, Aria, *Attorney for Plaintiffs-Appellees*

31.  Brewton Plante PA, *Attorneys for Defendants*

32.  Brigham, Robert, *Plaintiff-Appellee*

33.  Brodeen, Karen, *Attorney for Defendants-Appellants*

34.  Broward County Attorney's Office, *Attorney for Defendant*

35.  Brown, Summer, *Attorney for Defendant*

36.  Brown, Tomi, *Defendant*

37.  Budhu, Ryan, *Attorney for Plaintiffs-Appellees*

38.  Cannon, Starlet, *Defendant*

39.  Case, Andrew, *Attorney for Plaintiffs-Appellees*

40.  Cavataro, Benjamin, *Attorney for Plaintiffs-Appellees*

41.  Chambless, Chris, *Defendant*

42.  Chappell, William, *Attorney for Defendant-Appellant*

43.  Chason, Sharon, *Defendant*

44.  Choi, Ellen, *Attorney for Plaintiffs-Appellees*

45.  Chorba, William, *Attorney for Defendant-Appellant*

46.  City of Jacksonville, Office of General Counsel, *Attorneys for Defendant*

47.  Clark Partington, *Attorneys for Defendant*

48.  Common Cause, *Plaintiff-Appellee*

49.  Consovoy McCarthy PLLC, *Attorneys for Intervenor-Defendants-Appellants*

50.  Conyers, Grant, *Defendant*

51.  Corley, Brian, *Defendant*

52.  County of Volusia, *Attorneys for Defendant*

53.  Covington & Burling LLP, *Attorneys for Plaintiffs-Appellees*

54.  Cowles, Bill, *Defendant*

55.  Cuffe, Edward, *Attorney for Defendant*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

56.    Cycon, John, *Attorney for Defendant-Appellant*

57.    Daines, Kenneth, *Attorney for Defendant-Appellant*

58.    Dandeneau, Debra, *Attorney for Plaintiffs-Appellees*

59.    Darrow Everett LLP, *Attorneys for Plaintiffs-Appellees*

60.    Davis, Ashley, *Attorney for Defendant-Appellant*

61.    Davis, Vicki, *Defendant*

62.    De Paul, Romane, *Attorney for Plaintiffs-Appellees*

63.    Demos, *Attorneys for Plaintiffs-Appellees*

64.    Devaney, William, *Attorney for Plaintiffs-Appellees*

65.    Disability Rights Florida, *Plaintiff-Appellee*

66.    Doyle, Tommy, *Defendant-Appellant*

67.    Driggers, Heath, *Defendant*

68.    Duke, P. Benjamin, *Attorney for Plaintiffs-Appellees*

69.    Dukkipati, Uttara, *Attorney for Plaintiffs-Appellees*

70.    Dunaway, Carol, *Defendant*

71.    Earley, Mark, *Defendant*

72.    Edwards, Brendalyn, *Attorney for Defendant*

73.    Edwards, Jennifer, *Defendant*

74.    Edwards, Lori, *Defendant*

75.    Elias Law Group, *Attorneys for Plaintiffs-Appellees*

76.    Elias, Marc, *Attorney for Plaintiffs-Appellees*

77.    Ellis, Elizabeth, *Attorney for Defendant*

78.    Equal Ground Education Fund, *Plaintiff-Appellee*

79.    Erdelyi, Susan, *Attorney for Defendants*

80.    Escambia County Attorney's Office, *Attorneys for Defendant*

81.    Fair Elections Center, *Attorneys for Plaintiffs-Appellees*

82.    Faith in Florida, *Plaintiff-Appellee*

83.    Fajana, Francisca, *Attorney for Plaintiffs-Appellees*

84.    Farnam, Alteris, *Defendant*

85.    Faruqui, Bilal, *Attorney for Defendants-Appellants*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

86.   Feiser, Craig, *Attorney for Defendant*

87.   Ferenc, Samuel, *Attorney for Plaintiffs-Appellees*

88.   Fletcher, Michael, *Attorney for Plaintiffs-Appellees*

89.   Florida Alliance for Retired Americans Inc., *Plaintiff-Appellee*

90.   Florida Department of State, *Attorneys for Defendant-Appellant*

91.   Florida Office of the Attorney General, *Attorneys for Defendants-Appellants*

92.   Florida Rising Together, *Plaintiff-Appellee*

93.   Florida State Conference of the NAACP, *Plaintiff-Appellee*

94.   Ford, Christina, *Attorney for Plaintiffs-Appellees*

95.   Fouhey, Elizabeth, *Attorney for Plaintiffs-Appellees*

96.   Fox, David, *Attorney for Plaintiffs-Appellees*

97.   Fram, Daniel, *Attorney for Plaintiffs-Appellees*

98.   Freedman, John, *Attorney for Plaintiffs-Appellees*

99.   Frost, Elisabeth, *Attorney for Plaintiffs-Appellees*

100.  Galbraith, Miles, *Attorney for Plaintiffs-Appellees*

101.  Galindo, Emily, *Attorney for Plaintiffs-Appellees*

102.  Gardner Bist Bowden et al, *Attorneys for Defendants*

103.  Genberg, Jack, *Attorney for Plaintiffs-Appellees*

104.  Giannini, Mary, *Attorney for Defendant*

105.  Gibson, Benjamin, *Attorney for Intervenor-Defendants-Appellants*

106.  Gibson, Francesca, *Attorney for Plaintiffs-Appellees*

107.  Gordon, Phillip, *Attorney for Defendant-Appellant*

108.  Gray Robinson PA, *Attorneys for Defendant*

109.  Green, Tyler, *Attorney for Intervenor-Defendants-Appellants*

110.  Griffin, Joyce, *Defendant*

111.  Hanlon, John, *Defendant*

112.  Harriett Tubman Freedom Fighters Corp., *Plaintiff-Appellee*

113.  Hart, Travis, *Defendant*

114.  Hays, Alan, *Defendant-Appellant*

115.  Henderson Franklin Starnes etc., *Attorneys for Defendants*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

116. Hernando County Attorney's Office, *Attorneys for Defendant*

117. Herron, Mark, *Attorney for Defendant*

118. Hillsborough County Office of the County Attorney, *Attorneys for Defendant*

119. Hirschel, Andrew, *Attorney for Plaintiffs-Appellees*

120. Hispanic Federation, *Plaintiff-Appellee*

121. Hogan, Mike, *Defendant*

122. Holt, Dallin, *Attorney for Defendant-Appellant*

123. Holtzman Vogel Baran, et al., *Attorneys for Defendants-Appellants*

124. Hoots, Brenda, *Defendant*

125. Houlihan, Ashley, *Attorney for Defendant*

126. Hutto, Laura, *Defendant*

127. Janousek, John, *Attorney for Defendants*

128. Jarone, Joseph, *Attorney for Defendant*

129. Jazil, Mohammad, *Attorney for Defendant-Appellant*

130. Johnson, Diana, *Attorney for Defendant*

131. Johnson, Kia, *Attorney for Defendant*

132. Jones, Tammy, *Defendant*

133. Jouben, Jon, *Attorney for Defendant*

134. Joyner, Nia, *Attorney for Plaintiffs-Appellees*

135. Kahn, Jared, *Attorney for Defendant*

136. Kanter Cohen, Michelle, *Attorney for Plaintiffs-Appellees*

137. Karpatkin, Jeremy, *Attorney for Plaintiffs-Appellees*

138. Keen, William, *Defendant*

139. Khan, Sabrina, *Attorney for Plaintiffs-Appellees*

140. Khazem, Jad, *Attorney for Plaintiffs-Appellees*

141. King Blackwell Zehnder, etc PA, *Attorneys for Plaintiffs-Appellees*

142. King, Nellie, *Attorney for Plaintiffs-Appellees*

143. Kinsey, Jennifer, *Defendant*

144. Kirk, Stephen, *Plaintiff-Appellee*

145. Klitsberg, Nathaniel, *Attorney for Defendant*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

146. Knight, Shirley, *Defendant*

147. Labasky, Ronald, *Attorney for Defendants*

148. Latimer, Craig, *Defendant*

149. Latino Justice PRLDEF, *Attorneys for Plaintiffs-Appellees*

150. Lavia, John, *Attorney for Defendants*

151. Law Offices of Nellie King PA, *Attorneys for Plaintiffs-Appellees*

152. League of Women Voters of Florida Education Fund Inc., *Plaintiff-Appellee*

153. League of Women Voters of Florida, *Plaintiff-Appellee*

154. Lee, Laurel, *Defendant-Appellant*

155. Lenhart, Kaiti, *Defendant*

156. Lewis, Lisa, *Defendant*

157. Link, Wendy, *Defendant*

158. Lopez, Janine, *Attorney for Plaintiffs-Appellees*

159. Lux, Paul, *Defendant*

160. Madduri, Lalitha, *Attorney for Plaintiffs-Appellees*

161. Madison, Alan, *Plaintiff-Appellee*

162. Marcus, Julie, *Defendant*

163. Mari, Frank, *Attorney for Defendants*

164. Marks Gray PA, *Attorneys for Defendant*

165. McVay, Bradley, *Attorney for Defendant-Appellant*

166. Meadows, Therisa, *Defendant*

167. Meros, George, *Attorney for Intervenor-Defendants-Appellants*

168. Messer Caparello & Self PA, *Attorneys for Defendant*

169. Miami-Dade County Attorney's Office, *Attorneys for Defendant*

170. Miller, Jeffrey, *Attorney for Plaintiff-Appellees*

171. Milton, Chris, *Defendant*

172. Mood, Kirsten, *Attorney for Defendant*

173. Moody, Ashley, *Defendant-Appellant*

174. Moore, James, *Attorney for Defendants*

175. Morgan, Joseph, *Defendant*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

176. Morris, John, *Attorney for Plaintiffs-Appellees*

177. NAACP Legal Defense & Education Fund, Inc., *Attorneys for Plaintiffs-Appellees*

178. Nabors Giblin, & Nickerson PA, *Attorneys for Defendant*

179. Nasseri, Cyrus, *Attorney for Plaintiffs-Appellees*

180. National Center for Law and Economic Justice, *Attorneys for Plaintiffs-Appellees*

181. National Republican Senatorial Committee, *Intervenor-Defendant-Appellant*

182. Negley, Mark, *Defendant*

183. Nordby, Daniel, *Attorney for Intervenor-Defendants-Appellants*

184. Norris, Cameron, *Attorney for Intervenor-Defendants-Appellants*

185. Nunnally, Amber, *Attorney for Intervenor-Defendants-Appellants*

186. Oakes, Vicky, *Defendant*

187. O'Brien, Colleen, *Attorney for Defendant-Appellant*

188. O'Bryant, Patrick, *Attorney for Defendant*

189. O'Callaghan, Brendan, *Attorney for Plaintiffs-Appellees*

190. Ogg, Penny, *Defendant*

191. Olivo, Geraldo, *Attorney for Defendants*

192. Osborne, Deborah, *Defendant*

193. Ott, London, *Attorney for Defendant*

194. Overturf, Charles, *Defendant*

195. Palm Beach County Supervisor of Elections, *Attorneys for Defendant*

196. Paralyzed Veterans of America Central Florida Chapter, *Plaintiff-Appellee*

197. Paralyzed Veterans of America Florida Chapter, *Plaintiff-Appellee*

198. Perkins Coie LLP, *Attorneys for Plaintiffs-Appellees*

199. Perko, Gary, *Attorney for Defendant-Appellant*

200. Pernick, Michael, *Attorney for Plaintiffs-Appellees*

201. Pinellas County Attorney's Office, *Attorneys for Defendant*

202. Poder Latinx, *Plaintiff-Appellee*

203. Poliak, Shira, *Attorney for Plaintiffs-Appellees*

204. Price, Tara, *Attorney for Intervenor-Defendant-Appellants*

205. Reed, Mahogane, *Attorney for Plaintiffs-Appellees*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

206.  Republican National Committee, *Intervenor-Defendant-Appellant*

207.  Riley, Heathers, *Defendant*

208.  Rogers, Susan, *Plaintiff-Appellee*

209.  Romero-Craft, Kira, *Attorney for Plaintiffs-Appellees*

210.  Roper PA, *Attorneys for Defendants*

211.  Rosenthal, Oren, *Attorney for Defendant*

212.  Rudd, Carol, *Defendant*

213.  Salzillo, Benjamin, *Attorney for Defendant*

214.  Sanchez, Connie, *Defendant*

215.  Saunders, Morgan, *Attorney for Plaintiffs-Appellees*

216.  Scoon, Cecile, *Plaintiff-Appellee*

217.  Scott, Dale, *Attorney for Defendant*

218.  Scott, Joe, *Defendant,*

219.  Scott, Lori, *Defendant*

220.  Scott, Sharion, *Attorney for Plaintiffs-Appellees*

221.  Segarra, Esperanza, *Attorney for Plaintiffs-Appellees*

222.  Seyfang, Amanda, *Defendant*

223.  Shannin Law Firm PA, *Attorneys for Defendants*

224.  Shannin, Nicholas, *Attorney for Defendant*

225.  Shapiro, Daniel, *Attorney for Intervenor-Defendants-Appellants*

226.  Shaud, Matthew, *Attorney for Defendant*

227.  Shearman, Robert, *Attorney for Defendants*

228.  Sherman, Jonathan, *Attorney for Plaintiffs-Appellees*

229.  Short, Caren, *Attorney for Plaintiffs-Appellees*

230.  Shutts & Bowen LLP, *Attorneys for Intervenor-Defendants-Appellants*

231.  Siegel, Rachel, *Attorney for Defendant-Appellant*

232.  Sivalingam, Danielle, *Attorney for Plaintiffs-Appellees*

233.  Smith, Diane, *Defendant*

234.  Southerland, Dana, *Defendant*

235.  Southern Poverty Law Center, *Attorneys for Plaintiffs-Appellees*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

236.  Stafford, David, *Defendant*

237.  Stafford, William, *Attorney for Defendants-Appellants*

238.  Stamoulis, Paula, *Defendant*

239.  Stewart, Gregory, *Attorney for Defendant*

240.  Stiefel, Aaron, *Attorney for Plaintiffs-Appellees*

241.  Swain, Robert, *Attorney for Defendant*

242.  Swan, Leslie, *Defendant*

243.  Tarpley, Carlton, *Attorney for Plaintiffs-Appellees*

244.  Theodore, Elisabeth, *Attorney for Plaintiffs-Appellees*

245.  Todd, Stephen, *Attorney for Defendant*

246.  Trigg, Amia, *Attorney for Plaintiffs-Appellees*

247.  Tuetken, Adam, *Attorney for Amicus*

248.  Turner, Ron, *Defendant*

249.  UnidosUS, *Plaintiff-Appellee*

250.  Valdes, Michael, *Attorney for Defendant*

251.  Vicari, Kelly, *Attorney for Defendant*

252.  Villane, Tappie, *Defendant*

253.  Volusia County Attorney, *Attorneys for Defendant*

254.  Walker, Gertrude, *Defendant*

255.  Walker, Mark, *District Court Judge*

256.  Washington, D.C., Office of the Attorney General, *Attorneys for Amicus*

257.  Wermuth, Frederick, *Attorney for Plaintiffs-Appellees*

258.  Whitaker, Henry C., *Solicitor General of Florida*

259.  White, Christina, *Defendant*

260.  Wilcox, Wesley, *Defendant*

261.  Williamson, Virginia, *Attorney for Plaintiffs-Appellees*

262.  Wright, Brenda, *Attorney for Plaintiffs-Appellees*

263.  Zacherl, Frank, *Attorney for Intervenor-Defendants-Appellants*

264.  Zender, Thomas, *Attorney for Plaintiffs-Appellees*

No. 22-11133 (Related with Nos. 22-11143, 44, 45),
*League of Women Voters Inc. v. Lee*

The Republican National Committee and National Republican Senatorial Committee have no parent corporation, and no corporation owns 10% or more of their stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal. Per Circuit Rule 26.1-2(c), Appellants certify that the CIP contained in this motion is complete.

Dated: April 11, 2022

 */s/ Mohammad O. Jazil*
Counsel for Secretary Lee

 */s/ Tyler R. Green*
Counsel for RNC and NRSC

 */s/ Andy Bardos*
Counsel for Supervisors Hays & Doyle

 */s/ Henry C. Whitaker*
Counsel for Attorney General Moody

**INTRODUCTION**

"Our founding charter never contemplated that federal courts would dictate the manner of conducting elections." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1269 (11th Cir. 2020). Yet Florida's elections are now dictated by a single judge in Tallahassee. Chief Judge Walker has subjected the entire State of Florida to preclearance—something that, even before *Shelby County*, the Voting Rights Act didn't do. *See Jurisdictions Previously Covered by Section 5*, DOJ, bit.ly/3Obni3o (VRA covered only 5 Florida counties). Why? Because Chief Judge Walker decided that a handful of the 32 sections in Senate Bill 90 simply had to be intended to discriminate against black Floridians.

That is not remotely true. The decision below will likely be reversed—a fate it seems to embrace, as it openly criticizes the Supreme Court for believing we live in a "post-racial society," for "gutting" preclearance, for placing the VRA "under siege," and for applying *Purcell* hypocritically. Op.3, 44, 263. The court's discrimination ruling does not honor this Court's precedent in *Greater Birmingham* or even *mention* the presumption of legislative good faith. Its preclearance remedy is even worse. The court ordered that remedy knowing it would block provisions of a bill that the legislature just passed, one of which repeals part of SB90. And preclearance forces Florida to get its laws preapproved by the same judge who just called its elections director a liar, Op.118, 212-14, and who obliquely compared Florida's leaders to Vladimir Putin, Op.1 n.1.

The decision below should be stayed pending appeal. Because statewide elections are fast approaching, Appellants respectfully ask this Court to rule **as soon as possible**.

## BACKGROUND

Florida makes it easy to vote. Floridians can vote in person on election day—the only method available for most of our nation's history. *Brnovich v. DNC*, 141 S. Ct. 2321, 2339 (2021). Floridians can also vote by mail, with no special excuse needed, for more than 30 days before an election. Fla. Stat. §101.62(1), (4)(b). And they can vote early for 8-14 days. §101.657(1)(d). The State *mandates* the use of drop boxes. §101.69(2)(a).

Yet the 2020 elections presented new challenges nationwide. Administered during a global pandemic, 2020 saw an unprecedented surge in mail voting. Before the election, a record number of lawsuits were filed, charging States who enforced their written laws with "disenfranchise[ment]." *E.g.*, *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020). The few lawsuits that succeeded, and the many *Purcell* violations that had to be stayed, took a toll on voter confidence nationwide. *See Republican Party of Penn. v. Degraffenreid*, 141 S. Ct. 732, 735, 737 (2021) (Thomas, J., dissental); *DNC v. Wis. State Leg.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurral).

In response to 2020, many States reformed their election laws. Their main goals were to restore voter confidence and to articulate clear rules that would govern mail voting without sacrificing election integrity. *See Brnovich*, 141 S. Ct. at 2348 ("Fraud is a real risk that accompanies mail-in voting.").

Governor DeSantis signed SB90 in May 2021. The bill has 32 substantive sections, most of which have never been challenged. Plaintiffs filed four lawsuits here: *League of Women Voters* (No. 4:21-cv-186), *NAACP* (No. 4:21-cv-187), *Florida Rising*

(No. 4:21-cv-201), and *Harriett Tubman* (No. 4:21-cv-242). The district court permanently enjoined four provisions:

1. **Dropbox provisions**, §101.69: Prohibits the use of dropboxes outside of regular voting hours and requires dropboxes to be continuously monitored by an election official during those hours.

2. **Registration-delivery provision**, §97.0575(3)(a): Requires third-party voter registration organizations (3PVROs) to deliver voter-registration applications to the county where the applicant resides within 14 days or before registration closes.

3. **Registration-disclaimer provision**, §97.0575(3)(a): Requires 3PVROs to inform applicants that their applications might not be delivered on time and that they can register themselves in person, online, or by mail.

4. **Solicitation provision**, §102.031(4)(a)-(b): Defines prohibited solicitation to include "engaging in any activity with the intent to influence or effect of influencing a voter" in or near a polling place.

No plaintiff alleged that the registration-disclaimer provision was intentionally discriminatory. Op.12. The plaintiffs in *NAACP* and *Florida Rising* challenged the other three provisions on that ground. The plaintiffs in *League of Women Voters* and *Harriett Tubman*, however, never alleged intentional racial discrimination, brought claims under the Voting Rights Act, or sought preclearance.

After a bench trial, the district court ruled that the dropbox, solicitation, and registration-delivery provisions intentionally discriminate against black voters, and thus violate the Fourteenth Amendment, Fifteenth Amendment, and VRA. Op.134-36. Applying the multi-factor test from *Arlington Heights*, the court surveyed Florida's "history of racial discrimination" starting with the Civil War. Op.42-45. It then asserted that

3

Florida has repeatedly "target[ed] Black voters because of their affiliation with the Democratic party," mostly citing lawsuits where courts found that Florida *didn't* engage in intentional discrimination. *E.g.*, Op.52, 60, 64. The court also found that the procedures used to pass SB90 didn't cut "one way or the other," Op.83, while dismissing concerns over "voter confidence" and "fraud" as unpersuasive, Op.70-75. In terms of legislators' statements, the court largely dismissed their relevance. Op.84-88, 129.

Crucially to the court, it thought the challenged provisions had disparate impacts on black voters because it believed those voters are currently more likely to use drop-boxes, register through 3PVROs, and wait in long lines. Op.116. The court relied on Plaintiffs' experts, though it acknowledged the significant limitations in their methods and findings. Op.90-104, 109-15. The court further speculated that the Florida legislature—all of it—knew about these disparate impacts based on the election director's "face and body language" at a Zoom trial, a floor statement where one Republican *denied* that SB90 would have disparate impacts, and the criticisms of Democratic legislators. Op.88-89, 116-21. It also faulted the legislature for rejecting "less discriminatory alternatives" offered by Democrats, including "doing nothing." Op.122-25.

Based on its intentional-discrimination ruling, the district court not only permanently enjoined the laws, but also barred Florida from "enacting" any law "governing 3PVROs, drop boxes, or 'line warming' activities" without preclearing it with Chief Judge Walker. Op.281. The court admitted that "[t]he parties treat[ed] [preclearance] as an afterthought," giving it less than six total pages of briefing. Op.270. But the court

failed to note that, despite asking the parties for supplemental briefing on countless topics, it never once asked for more briefing on preclearance. *E.g.*, *League* Docs. 471, 542, 543, 554, 630, 636, 657, 659. Nor did it conduct a remedial hearing. The court instead applied the multi-factor test from *Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990). It didn't apply *Shelby County*, except to criticize that opinion as wrong. Op.44, 273-74. The court stressed that §3(c) of the VRA allows courts to order preclearance, and it held that preclearance was plainly constitutional under Congress's authority to "'make or alter'" States' regulations of federal congressional elections. Op.280 (quoting U.S. Const. art. I, §4, cl. 1).

As for the registration-disclaimer provision, the district court ruled that it compelled speech in violation of the First Amendment. Op.218. The court acknowledged that the Florida legislature had since passed SB524—a bill that, once signed by the governor, will "moo[t] Plaintiffs' claims challenging the registration disclaimer." Op.190, 258. In fact, it cited SB524 *against* the State, contending that its less restrictive alternative proved that the registration-disclaimer provision "is not narrowly tailored." Op.215-16. But instead of staying its hand, the court enjoined the registration-disclaimer provision. Its preclearance order now means that SB524's repeal of the registration-disclaimer *cannot* come into force without the court's blessing. In other words, the court invalidated a provision that "[a]ll agree" would "likely become moot soon," and blocked enforcement of the legislation that would moot it. Op.190.

Finally, as an alternative ground for invalidating SB90's solicitation provision, the district court deemed that provision vague and overbroad. According to Plaintiffs, this provision regulates speech to the extent it prevents them from giving voters in line food, water, and other tangible items. Op.182-83. The district court not only agreed, but held that this defect made the provision *facially* unconstitutional. Op.157-87.

The district court then denied a stay pending appeal. Op.268-69. It criticized the "all-powerful" *Purcell* principle as "wholly judge-made" and accused certain Justices of applying it hypocritically. Op.261-68. It refused to apply that principle here because SB90 is a "new" law, Plaintiffs challenged it immediately, Plaintiffs prevailed on the merits, and "the closest election is roughly five months away." Op. 261-68. Two supervisors also testified, according to the court, that enjoining SB90 would adversely affect them only "'a little.'" Op.266-67. The district court did not appreciate that elections are *currently* happening in Miami-Dade County, that statewide primaries begin in only three months, and that registrations must be processed, poll workers trained, and dropboxes sited well before then.

## ARGUMENT

Stays pending appeal turn on four factors:

1. the likelihood the moving party will prevail on the merits;
2. the prospect of irreparable injury to the moving party if relief is withheld;
3. the possibility of harm to other parties if relief is granted; and
4. the public interest.

11th Cir. R. 27-1. In "election cases," courts also must consider the *Purcell* principle. *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurral) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). In the 2020 cycle, these factors "consistently pointed … in one direction—allowing the States to run their own elections." *New Ga. Project*, 976 F.3d at 1283. They point that direction in 2022.

## I. Movants will likely prevail on appeal.

The district court ruled that three provisions of SB90 are intentionally discriminatory, that Florida should be put in preclearance, that the registration-disclaimer provision should be invalidated despite its impending repeal, and that the solicitation provision is overbroad and vague. This Court will likely disagree on each point.

### A. Intentional racial discrimination

This Court will likely reverse the district court's ruling that three provisions of SB90 were passed with racially discriminatory intent. A detailed critique of the district court's 288-page opinion will have to wait for the appellate briefs. For now, two obvious errors warrant a stay. First, the district court didn't *mention*, let alone apply, "the presumption of legislative good faith." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018). Second, the district court didn't apply recent precedents clarifying the scope of *Arlington Heights*—most notably, this Court's decision in *Greater Birmingham*.

The district court "failed to apply—or even mention—the presumption of legislative good faith to which the [legislature] was entitled." *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 303 (4th Cir. 2020). The words "good faith" don't even appear

7

in the opinion. And the district court repeatedly presumed *bad* faith. It assumed that SB90's proponents intended to impose disparate impacts on black Floridians, instead of crediting their denials that any such impacts would occur. Op.88; *see also Personnel Admin. v. Feeney*, 442 U.S. 256, 279 (1979) (rejecting that "awareness of consequences" shows discriminatory intent anyway). And although the law does not require legislators to justify election laws with specific evidence, *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009), the court used the supposed lack of record evidence to discredit the legislators' concerns with voter confidence and fraud as pretextual shams. Op.131. It also found that Florida would continue discriminating in the future based solely on the fact that "the Governor's Mansion and the Legislature are controlled by [the Republican] party." Op.277.

At a more granular level, the district court applied *Arlington Heights* without honoring the ways that subsequent precedents have refined that test. After criticizing those precedents or citing them at an extremely high level, the district court never applied the Supreme Court's decision in *Brnovich* or this Court's decision in *Greater Birmingham*. It thus committed several fatal errors:

- *Greater Birmingham* holds that the relevant "historical background" is "the precise circumstances surrounding the passing of the [challenged] law." 992 F.3d at 1325-26; *accord Bronovich*, 141 S. Ct. 2335. Yet the district court's historical analysis consisted of events disconnected from SB90, dating back to the Civil War. Op.42-45.

- *Greater Birmingham* emphasizes that "combatting voter fraud" and "increasing confidence in elections" are "valid neutral justifications" that dispel an

8

inference of discrimination, "even in the absence of any record evidence." 992 F.3d at 1327, 1334 & n.47; *accord Brnovich*, 141 S. Ct. at 2348. Yet the district court chalked these interests up to unproven, illegitimate pretexts. Op.131-32.

- *Brnovich* warns courts not to conflate "partisan motives" with "racial motives." 141 S. Ct. at 2349. And it warns courts not to use "differences in employment, wealth, and education" to invalidate state election laws based solely on "disparate impact." *Id.* at 2343; *accord Greater Birmingham*, 992 F.3d at 1327. Yet these flawed lines of reasoning comprise virtually all the district court's analysis.

- *Greater Birmingham* reminds courts that disparate impacts must be so "stark" that they reveal a pattern "unexplainable on grounds other than race." 992 F.3d at 1322. The district court found nothing like that. Its data suggested, at most, miniscule differences in how black Floridians voted before SB90. *E.g.*, Op.90-116. The data didn't purport to be reverse causal. And it was admittedly "limited," "unclear," "not necessarily representative," and "not statistically significant." Op.97-98, 100-12.

- *Greater Birmingham* does not fault legislatures for rejecting "the alternative option[s] that Plaintiffs would have preferred." 992 F.3d at 1327. But the district court faulted the legislature for rejecting opponents' amendments and their attempts to outright kill SB90. Op.122-25. That opponents' "preferred rule did not prevail ... does not suggest that the resulting rule violates the Constitution." *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1193 n.8 (9th Cir. 2021).

- *Greater Birmingham* rejects the relevance of statements from single legislators, especially comments unrelated to the law in question. 992 F.3d at 1324-25. Yet the district court seemingly gave such comments "marginal" weight. Op.129.

For any or all of these reasons, the district court's ruling on intentional discrimination will not survive this appeal.

## B.    Preclearance

Because the district court erred in finding intentional discrimination, its preclearance remedy necessarily falls. Section 3(c) does not apply unless "violations of the

fourteenth or fifteenth amendment have occurred," 52 U.S.C. §10302(c)—meaning violations of the "protections against *intentional racial discrimination* in voting." *Perez v. Abbott*, 390 F. Supp. 3d 803, 814-18 (W.D. Tex. 2019) (emphasis added); *accord Veasey v. Abbott*, 888 F.3d 792, 801 (5th Cir. 2018). But even apart from being unsupported by a legitimate finding of liability, the district court's imposition of preclearance has independent flaws.

When deciding whether to impose that drastic remedy, the district court applied the wrong standard. It followed the Eastern District of Arkansas's decades-old decision in *Jeffers*. But this Court must follow *Shelby County*, which made clear that preclearance is "a drastic departure" from federalism and equal sovereignty. 570 U.S. 529, 535 (2013). Whether through Congress or the courts, the "Federal Government does not … have a general right to review and veto state enactments before they go into effect." *Id.* at 542; *see also Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (federal courts must give "appropriate consideration … to principles of federalism in determining the availability and scope of equitable relief"). Under *Shelby County*, preclearance is unconstitutional absent "exceptional conditions." 570 U.S. at 545, 556-57; *see Perez*, 390 F. Supp. 3d at 819 ("In the wake of *Shelby County*, courts have been hesitant to grant §3(c) relief.").

The district court never attempted to find "exceptional conditions" of the kind referenced in *Shelby County*. They don't exist. *See Shelby Cnty.*, 570 U.S. at 551, 554. Indeed, they've long been gone in Florida, which was never subject to statewide preclearance—even in 1965. And today, black Floridians register and vote at rates of 58% and

52%—comparable to Oregon and far exceeding States like Colorado, Massachusetts, Minnesota, and Washington. *See Table 4b, Reported Voting & Registration, by Sex, Race and Hispanic Origin, for States: November 2020*, Census Bureau, bit.ly/37qgCgA. Nor could the district court sidestep preclearance's constitutional problems by pointing to Congress's authority over congressional elections. Op.279-80. Congress didn't use that power to enact the VRA, that power does not reach state elections or presidential elections, and no congressional power can used to violate basic principles of federalism. *See South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966); *McPherson v. Blacker*, 146 U.S. 1, 35 (1892); *Printz v. United States*, 521 U.S. 898, 923-24 (1997).

But under any standard, preclearance was wildly inappropriate here. SB90 is not the kind of law that could trigger preclearance: Plaintiffs didn't challenge most of the bill, only two groups even alleged intentional discrimination, and the district court *rejected* many of those allegations. Nor is Florida a repeat offender: The best the district court could muster was a string of cases where courts held that Florida *didn't* engage in racial discrimination. Op.52-65. At worst, the district court should have held that preclearance is "not necessary here in light of [its] injunction." *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 241 (4th Cir. 2016). Florida has no history of evading court orders. The district court stressed Florida's past compliance. Op.6-7 & n.4. And its one supposed counterexample—SB524—is hardly "a mockery of the rule of law." Op.279. It outright repeals one of the challenged provisions, a registration disclaimer that Plaintiffs never alleged was racially discriminatory to begin with, *see* Op.12. And forcing these

parties to litigate preclearance issues saves no more time or money than ordinary litigation. *Cf.* Op.278-89. If anything, it *increases* the costs since provisions of law must be precleared that otherwise would not have been challenged.

Far from a "rarely used" remedy for the most "'systematic and deliberate'" cases of discrimination, the district court's reasoning would make preclearance the norm in voting-rights cases. *Conway Sch. Dist. v. Wilhoit*, 854 F. Supp. 1430, 1442 (E.D. Ark. 1994). That the court reached for this blunderbuss remedy—effectively putting Florida in a decade-long federal receivership—is reason enough to stay its order.

## C.    Registration disclaimer

This Court will likely vacate the district court's injunction against the registration disclaimer. Op.218. Appellants disagree that this provision violates the First Amendment. *See* Op.202-18 (recounting Appellants' arguments). But the Court need not resolve that debate because the Florida legislature passed SB524, which repeals it. Governor DeSantis plans to sign SB524 imminently. No one disputes that it will moot the parties' dispute over the registration disclaimer. Op.190. The only thing stopping it is the district court's preclearance order. Once that relief is stayed, all of SB524 will go into effect, mooting Plaintiffs' claims and prompting this Court to vacate that part of the district court's order. *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1271 n.24 (11th Cir. 2017) (en banc).

The district court's contrary course was an abuse of discretion. Far from constitutional avoidance, it reached out to strike down a statute that was about to be repealed.

The imminent repeal was at least a reason to hold this claim in abeyance or enter a partial stay, rather than ruling before Governor DeSantis could sign the bill and then barring the relevant provision from taking immediate effect. Because a stay will end this dispute without a constitutional ruling or an intrusion on Florida's elections, this Court should enter one.

### D.    Solicitation provision

Lastly, the solicitation provision is not vague or overbroad, let alone *facially* so. Though a facially vague law needn't be vague in every application, it must be vague in "the vast majority" of applications. *Hill v. Colorado*, 530 U.S. 703, 733 (2000). A facially vague statute, in other words, must be "utterly devoid of a standard of conduct so that it simply has no core." *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982).

The solicitation provision has a clear core. It bans "solicit[ing]" voters who are inside or near the polling place. Fla. Stat. §102.031(4)(a). The word "solicit" is common to the law and not vague. *Sun-Sentinel Co. v. City of Hollywood*, 274 F. Supp. 2d 1323, 1333 (S.D. Fla. 2003). And SB90 does not make it facially vague by specifying that it includes "engaging in any activity with the intent to influence or effect of influencing a voter." Fla. Stat. §102.031(4)(b). That phrase is clarified by the long list of examples that precede it, including "seeking … any vote," "distributing … campaign material," and "selling … any item." *Id.*; *see United States v. Williams*, 553 U.S. 285, 294 (2008). And its "intent" requirement further reduces any facial vagueness. *Hill*, 530 U.S. at 732. In context and everyday meaning, the solicitation provision is clear: it allows "voters [to] focus on

the important decisions immediately at hand." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018). As even the district court observed, it "shield[s] voters from … common annoyances" and deters the "taint of fraud or intimidation." Op.176.

For similar reasons, the solicitation provision is not facially overbroad. A facially overbroad law must lack a "'plainly legitimate sweep.'" *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1377 (11th Cir. 2021). The district court made no such determination here. Even if some applications violated the First Amendment, the vast majority don't. No one disputes that the statute can be applied to pure conduct, like bribes. Or commercial speech, like selling goods. Or outright electioneering. In fact, the statute is incapable of overbreadth because it applies only in or near polling places during voting hours—*i.e.*, nonpublic forums. *Hodge v. Talkin*, 799 F.3d 1145, 1171 (D.C. Cir. 2015). As the Supreme Court explained in *Mansky*, its decision in *Burson v. Freeman* didn't resolve whether the areas "*surrounding* a polling place qualify as a nonpublic forum," but history and tradition reveal that areas "in *and around* polling places" are precisely that. 138 S. Ct. at 1886, 1883 (second emphasis added).

Even as applied to Plaintiffs, the solicitation provision is constitutional. Plaintiffs claim they want to distribute food and water to voters waiting in line within 150 feet of the polling place. Florida could reasonably determine that this task should be left to "nonpartisan" election officials. Fla. Stat. §102.031(4)(b). And distributing food and water is not speech. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1292 (11th Cir. 2021) ("[M]ost social-service food sharing events will not be

expressive."). Though it can be in unique contexts, that context is missing here. *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1343-47 (11th Cir. 2021). Giving a voter food or water could mean "Stay in line" or "Thanks for voting," but it could also mean "You look thirsty/hungry," "It's hot/cold outside," "We'd like to get rid of these extras," "Come visit our church," "Would you like to buy some water?", "Try this free sample," or "Vote for my candidate." As the district court acknowledged, *see* Op.163-67, a voter cannot tell which message is being expressed without additional speech—a telltale sign that the conduct is "not inherently expressive." *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006).

The district court never explained why providing food and water to people waiting in line communicates this message but literally helping people vote does not. *See accord Feldman v. Ariz. Sec'y of State's Off.*, 840 F.3d 1057, 1084 (9th Cir. 2016) ("facilitating voting" is not speech); *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (collecting and returning absentee ballots is not speech). Plaintiffs submitted no such evidence. That they subjectively intend to express a message and that other people thank them for the free food and water, *see* Op.164-65, is not enough.

## II.    Under the *Purcell* principle, the equities alone require a stay.

"[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox, Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). But in election cases, that observation dictates the remaining stay factors.

*Purcell* teaches that staying the district court's order prevents the "seriou[s] and irreparabl[e] harm" of barring Florida from "conducting this year's elections pursuant to a statute enacted by the Legislature." *New Ga. Project*, 976 F.3d at 1283. And it alleviates other irreparable harms, including administrative burdens and voter confusion. *Wis. State Legislature*, 141 S. Ct. at 31 (Kavanaugh, J., concurral); *Purcell*, 549 U.S. at 4-5. These widespread harms to *most* voters dwarf any harm to *individual* plaintiffs, whose victory is at worst delayed pending appeal. *Milligan*, 142 S. Ct. at 882 (Kavanaugh, J., concurral). And avoiding these harms serves "the public interest in orderly elections." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944-45 (2018). "Simply put, a stay preserves the status quo and promotes confidence in our electoral system—assuring voters that all will play by the same, legislatively enacted rules." *New Ga. Project*, 976 F.3d at 1284.

Importantly, *Purcell* is a sufficient basis to grant a stay. The Supreme Court has invoked it while expressing "no opinion" on the merits, *Purcell*, 549 U.S. at 5; where the plaintiffs had "a fair prospect of success," *Milligan*, 142 S. Ct. at 881 n.2 (Kavanaugh, J., concurral); and even where the challenged law was "invalid," *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). These applications reflect the long-established principle that, where the equities heavily favor a stay, courts need not decide whether the appellant will *likely* succeed on the merits. *See LabMD, Inc. v. FTC*, 678 F. App'x 816, 819 (11th Cir. 2016). It's enough that the appeal will raise "a serious legal question." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A 1981).

The district court didn't say that this appeal is unserious. It declined to follow *Purcell* because "the closest election is roughly five months away," "Plaintiffs have not delayed," and two supervisors testified that an injunction wouldn't burden them much. Op.265-68. None of that is true. Nor is the district court's reasoning entitled to deference. This Court is not reviewing the district court's denial of a stay, but rather must make "an equitable judgment of [its] own." *Trump v. IRAP*, 137 S. Ct. 2080, 2087 (2017). It should make a different call.

The district court's order falls squarely within *Purcell*'s forbidden window. Issued on March 31, the order came *in the middle* of two elections in Miami-Dade County. *See Municipal Elections*, Miami-Dade Cnty. (Mar. 15, 2022), bit.ly/3r4w09y (elections ending on April 5 and April 12). Though Florida's statewide primaries are in August, absentee voting starts in early July. *Election Dates*, Fla. DOE, bit.ly/3pMYrbx (last visited Apr. 7, 2022). Three months from the start of voting is too close under *Purcell. E.g.*, *Milligan*, 142 S. Ct. at 888 (Kagan, J., dissental) (four months); *Thompson v. DeWine*, 2020 WL 3456705 (2020) (six months). Indeed, the district court enjoined provisions governing voter registration, which is currently underway for the August primaries. *See Election Dates.* As are trainings for the poll workers who must implement the solicitation rules, plus the selection of early voting sites (and thus dropboxes).

It is the district court's injunction, not SB90, that changes the status quo under *Purcell.* SB90 is not new: It was passed over a year ago, and it has already been applied to a congressional election in January 2022, several state legislative primaries in January,

several state legislative elections in March, and numerous municipal elections in March. *See, e.g.*, *Special Elections Archive*, Fla. DOE, bit.ly/3I0g8dK (last visited Apr. 11, 2022); *Special Elections*, Fla. DOE, bit.ly/3CyYBIt (last visited Apr. 11, 2022); *Election Dates and Deadlines*, Palm Beach Cnty. Elections, bit.ly/3hXoVCI (last visited Apr. 11, 2022). Even if SB90 were new, "[i]t is one thing for state legislatures to alter their own election rules …. It is quite another thing for a federal district court to swoop in and alter carefully considered and democratically enacted state election rules." *Wis. State Legislature*, 141 S. Ct. at 31 (Kavanaugh, J., concurring). After preparing to implement SB90, officials now must "understand the court's injunction, then devise plans to implement that late-breaking injunction, and then determine as necessary how best to inform [others]." *Id.* Mix in the need for a "conflicting" stay order on appeal and the risk of "voter confusion" and the "consequent incentive to remain away from the polls" is high. *Purcell*, 549 U.S. at 4-5.

Nor does it matter that Plaintiffs quickly sued Florida. Though they quickly filed their *complaints*, Plaintiffs didn't move for preliminary injunctions or even summary judgment on all claims; they chose to go to trial, running the risk that a judgment would issue close to the 2022 elections. And *Purcell* is mostly "focused on the date of court orders," not the date of plaintiffs' filings. *Feldman v. Reagan*, 843 F.3d 366, 410 (9th Cir. 2016) (O'Scannlain, J., dissental). The Supreme Court has invoked *Purcell* where the plaintiffs sued a year before the election, *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014); six weeks after the challenged law passed, *Ariz. Sec'y of State's Office*

18

*v. Feldman*, 137 S. Ct. 446 (2016); and even "'hours" after the challenged law passed, *Milligan*, 142 S. Ct. at 888 (Kagan, J., dissental). Applying *Purcell* in these cases furthered the core principle of "allow[ing] the States to run their own elections." *New Ga. Project*, 976 F.3d at 1283.

Finally, *Purcell* cannot be defeated by the equivocal testimony of two supervisors. Those supervisors represent counties whose policies largely mirrored SB90's dropbox and solicitation requirements; they cannot speak for the counties whose preparations will be disrupted by the district court's injunction. *See* Tr.3156-68, 3496-501. Nor should two supervisors override Florida's chief election officer, its attorney general, two other supervisors, and a major political party—all of whom are seeking a stay under *Purcell*.

At most, the two supervisors could speak to the effect of a stay on election "administration" within their two counties. Op.267. But *Purcell* is equally, if not more, concerned with voter confusion and electoral confidence. Those "essential" interests are certainly implicated by a last-minute injunction wrongly accusing the State of intentionally suppressing the votes of racial minorities, *see Purcell*, 549 U.S. at 4-5, and subjecting the State to preclearance for the next decade, *see Shelby Cnty.*, 570 U.S. at 544-45.

## CONCLUSION

This Court should grant a stay pending appeal as soon as reasonably possible.

/s/ *Mohammad O. Jazil*
Mohammad O. Jazil
Gary V. Perko
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690 / (540) 341-8809 (fax)
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com

Phillip M. Gordon
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
(540) 341-8808 / (540) 341-8809 (fax)
pgordon@holtzmanvogel.com

Bradley R. McVay
  *General Counsel*
Ashley E. Davis
  *Deputy General Counsel*
Colleen E. O'Brien
  *Assistant General Counsel*
William Chappel
  *Assistant General Counsel*
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
(850) 245-6536 / (850) 245-6127 (fax)
brad.mcvay@dos.myflorida.com
ashley.davis@dos.myflorida.com
colleen.obrien@dos.myflorida.com
David.chappell@dos.myflorida.com

*Counsel for Secretary Lee*

/s/ *Tyler R. Green*
Tyler R. Green
Cameron T. Norris
Daniel Shapiro
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tyler@consovoymccarthy.com
cam@consovoymccarthy.com
daniel@consovoymccarthy.com

Benjamin J. Gibson
Daniel E. Nordby
George N. Meros Jr.
Frank A. Zacherl
Amber Stoner Nunnally
Tara R. Price
SHUTTS & BOWEN LLP
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
(850) 241-1717
bgibson@shutts.com
dnordby@shutts.com
gmeros@shutts.com
fzacherl@shutts.com
anunnally@shutts.com
tprice@shutts.com

*Counsel for Republican National Committee*
*& National Republican Senatorial Committee*

<u>/s/ Andy Bardos</u>
Andy Bardos
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, FL 32301
(850) 577-9090
(850) 577-3311 (fax)
andy.bardos@gray-robinson.com

*Counsel for Supervisors Hays and Doyle*

<u>/s/ Henry C. Whitaker</u>
Henry C. Whitaker
 *Solicitor General*
Daniel W. Bell
 *Chief Deputy Solicitor General*
Bilal Ahmed Faruqui
 *Senior Assistant Attorney General*
Karen Ann Brodeen
 *Special Counsel*
William Edward Chorba
 *Senior Assistant Attorney General*
William Henry Stafford, III
 *Senior Assistant Attorney General*
FLORIDA ATTORNEY GENERAL OFFICE
PL-01 The Capitol
Tallahassee, FL 32399
(850) 414-3300
henry.whitaker@myfloridalegal.com
daniel.bell@myfloridalegal.com
bilal.faruqui@myfloridalegal.com
karen.brodeen@myfloridalegal.com
william.chorba@myfloridalegal.com
william.stafford@myfloridalegal.com

*Counsel for Attorney General Moody*

**CERTIFICATE OF COMPLIANCE**

This motion complies with Rule 27(d)(2)(A) because it contains 5,046 words, excluding the parts that can be excluded. This motion also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: April 11, 2022                    */s/ Mohammad O. Jazil*

**CERTIFICATE OF SERVICE**

I filed this motion with the Court via ECF. I also served via e-mail a copy of this motion on all counsel of record identified in the service list that follows.

Dated: April 11, 2022                    */s/ Mohammad O. Jazil*

## E-MAIL SERVICE LIST

ARIA CHRISTINE BRANCH
ELIAS LAW GROUP
10 G STREET NE SUITE 600
WASHINGTON, DC 20002
202−968−4518
Email: abranch@elias.law

DAVID ROBERT FOX
ELIAS LAW GROUP
10 G STREET NE SUITE 600
WASHINGTON, DC 20002
202−968−4510
Email: dfox@elias.law

ELISABETH C FROST
ELIAS LAW GROUP
10 G STREET NE SUITE 600
WASHINGTON, DC 20002
202−968−4513
Email: efrost@elias.law

FRANCESCA ASHLEY
GIBSON ELIAS LAW GROUP
10 G STREET NE SUITE 600
WASHINGTON, DC 20002
202−968−4553
Email: fgibson@elias.law

LALITHA D MADDURI
ELIAS LAW GROUP
10 G STREET NE SUITE 600
WASHINGTON, DC 20002
202−968−4593
Email: lmadduri@elias.law

CHRISTINA A FORD
ELIAS LAW GROUP
10 G STREET NE SUITE 600
WASHINGTON, DC 20002

202−968−4558
Email: cford@elias.law

DANIELLE E SIVALINGAM
PERKINS COIE LLP
1888 CENTURY PARK EAST SUITE 1700
LOS ANGELES, CA 90067
310−788−3200
Fax: 310−843−1269
Email: dsivalingam@perkinscoie.com

MARC E ELIAS
ELIAS LAW GROUP
10 G STREET NE SUITE 600
WASHINGTON, DC 20002
202−968−4510
Email: melias@elias.law

THOMAS ALAN
ZEHNDER KING BLACKWELL ZEHNDER & WERMUTH PA
25 E PINE STREET
ORLANDO, FL 32801
407−422−2472
Email: tzehnder@kbzwlaw.com

FREDERICK STANTON WERMUTH
KING BLACKWELL ZEHNDER ETC PA
25 E PINE ST
ORLANDO, FL 32801
407−422−2472
Fax: 407−648−0161
Email: fwermuth@kbzwlaw.com

AARON STIEFEL
ARNOLD & PORTER LLP
250 WEST 55TH STREET
NEW YORK, NY 10019
212−836−8000
Email: aaron.stiefel@arnoldporter.com

BRENDA WRIGHT

DEMOS – NEW YORK NY
80 BROAD STREET
4TH FLOOR
NEW YORK, NY 10004
646−948−1621
Email: bwright@demos.org

ELISABETH SUSAN THEODORE
ARNOLD & PORTER LLP
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202−942−5545
Fax: 202−942−5000
Email: elisabeth.theodore@arnoldporter.com

EMILY MIRANDA GALINDO
LATINO JUSTICE PRLDEF
3813 HORATIO STREET APT B
TAMPA, FL 33609
917−209−7834
Email: mgalindo@latinojustice.org

JANINE MARIE LOPEZ
ARNOLD & PORTER LLP
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202−942−5545
Fax: 202−942−5000
Email: janine.lopez@arnoldporter.com

JEFFREY ANDREW MILLER
ARNOLD & PORTER LLP
3000 EL CAMINO REAL FIVE
PALO ALTO SQUARE SUITE 500
PALO ALTO, CA 94306−3807
650−319−4538
Email: jeffrey.miller@arnoldporter.com

JEREMY KARPATKIN
ARNOLD & PORTER LLP
601 MASSACHUSETTS NW

WASHINGTON, DC 20001
202−942−5545
Fax: 202−942−5000
Email: jeremy.karpatkin@arnoldporter.com

JOHN A FREEDMAN
ARNOLD & PORTER LLP
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202−942−5545
Fax: 202−942−5000
Email: john.freedman@arnoldporter.com

KIRA ROMERO−CRAFT
DEMOS
80 BROAD STREET
4TH FLOOR
NEW YORK, NY 10004
212−389−1415
Email: kromero@latinojustice.org

AMIA TRIGG
NAACP LEGAL DEFENSE & EDUCATION FUND INC
700 14TH STREET NW SUITE 600
WASHINGTON, DC 20005
202−682−1300
Email: atrigg@naacpldf.org

BENJAMIN LOUIS BAER CAVATARO
COVINGTON & BURLING LLP
ONE CITY CENTER 850 TENTH ST NW
WASHINGTON, DC 20001
202−662−5018
Email: bcavataro@cov.com

ELIZABETH T FOUHEY
COVINGTON & BURLING LLP
ONE CITY CENTER 850 TENTH ST NW
WASHINGTON, DC 20001
202−662−5607
Email: efouhey@cov.com

MICHELLE E KANTER COHEN
FAIR ELECTIONS CENTER
1825 K STREET NW SUITE 450
WASHINGTON, DC 20006
202−248−5347
Email: mkantercohen@fairelectionscenter.org

NANCY GBANA ABUDU
SOUTHERN POVERTY LAW CENTER
400 WASHINGTON AVE
MONTGOMERY, AL 36104
404−521−6700
Email: nancy.abudu@splcenter.org

DIANA MASTERS JOHNSON
ALACHUA COUNTY ATTORNEYS OFFICE
12 SE 1ST STREET
GAINESVILLE, FL 32601
352−374−5218
Fax: 352−374−5216
Email: dmjohnson@alachuacounty.us

ROBERT CHARLES SWAIN
ALACHUA COUNTY ATTORNEY'S OFFICE
12 SE FIRST ST PO BOX 2877
GAINESVILLE, FL 32602
352−374−5218
Email: bswain@alachuacounty.us

EDWARD PAUL CUFFE
MARKS GRAY PA
1200 RIVERPLACE BLVD STE 800
JACKSONVILLE, FL 32207
904−807−2110
Email: pcuffe@marksgray.com

SUSAN SMITH ERDELYI
MARKS GRAY PA
1200 RIVERPLACE BLVD STE 800
JACKSONVILLE, FL 32207
904−398−0900

Fax: 904−399−8440
Email: sse@marksgray.com

FRANK MICHAEL MARI
ROPER PA
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407−897−5150
Email: fmari@roperpa.com

JOHN M JANOUSEK
ROPER PA
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407−897−5150
Email: jjanousek@roperpa.com

BENJAMIN SALZILLO
BROWARD COUNTY ATTORNEYS OFFICE
115 S ANDREWS AVE STE 423
FORT LAUDERDALE, FL 33301
561−245−0360
Email: bsalzillo@broward.org

BRENDALYN EDWARDS
BROWARD COUNTY ATTORNEY'S OFFICE
115 S ANDREWS AVENUE SUITE 423
FORT LAUDERDALE, FL 33301
954−357−7600
Fax: 954−357−7641
Email: brendalynedwards@gmail.com

JOSEPH K JARONE
BROWARD COUNTY ATTORNEY
115 S ANDREWS AVENUE RM 423
FORT LAUDERDALE, FL 33301
954−357−7600
Fax: 954−347−7641
Email: jkjarone@broward.org

NATHANIEL ADAM KLITSBERG

BROWARD COUNTY ATTORNEYS OFFICE
115 S ANDREWS AVE STE 423
FORT LAUDERDALE, FL 33301
954−357−7600
Fax: 954−357−7641
Email: nklitsberg@broward.org

DALE A SCOTT
ROPER PA
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407−897−5150
Fax: 407−897−3332
Email: dscott@bellroperlaw.com

JOHN T LAVIA , III
GARDNER BIST BOWDEN ET
1300 THOMASWOOD DR
TALLAHASSEE, FL 32308
850−385−0070
Fax: 850−385−5416
Email: jlavia@gbwlegal.com

RONALD A LABASKY
BREWTON PLANTE PA
215 S MONROE STREET SUITE 825
TALLAHASSEE, FL 32301
850−222−7718
Fax: 850−222−8222
Email: rlabasky@bplawfirm.net

CRAIG DENNIS FEISER
OFFICE OF GENERAL COUNSEL
117 W DUVAL STREET
SUITE 480
JACKSONVILLE, FL 32202
904−255−5052
Fax: 904−255−5120
Email: cfeiser@coj.net

MARY MARGARET GIANNINI

CITY OF JACKSONVILLE OFFICE OF GENERAL COUNSEL
117 W DUVAL STREET SUITE 480
JACKSONVILLE, FL 32202
904−255−5079
Email: mgiannini@coj.net

MATTHEW REED SHAUD
ESCAMBIA COUNTY ATTORNEYS OFFICE
221 PALAFOX PLACE
SUITE 430
PENSACOLA, FL 32502
850−595−4970
Email: mrshaud@myescambia.com

GERALDO FRANCIS OLIVO, III
HENDERSON FRANKLIN STARNES ETC
1715 MONROE ST [33901]
PO BOX 280
FORT MYERS, FL 33902
239−344−1168
Email: jerry.olivo@henlaw.com

ROBERT C SHEARMAN
HENDERSON FRANKLIN STARNES ETC
1715 MONROE ST [33901]
PO BOX 280
FORT MYERS, FL 33902
239−344−1346
Email: robert.shearman@henlaw.com

JON A JOUBEN
HERNANDO COUNTY
20 N MAIN STREET SUITE 462
BROOKESVILLE, FL 34601−2850
351−754−4122
Fax: 352−754−4001
Email: jjouben@co.hernando.fl.us

KYLE J BENDA
HERNANDO COUNTY ATTORNEYS OFFICE
20 N MAIN ST STE 462

BROOKSVILLE, FL 34601−2850
352−754−4122
Email: kbenda@co.hernando.fl.us

STEPHEN MARK TODD
OFFICE OF THE COUNTY ATTORNEY HILLSBOROUGH COUNTY
601 E KENNEDY BLVD
27TH FLOOR TAMPA, FL 33602
813−272−5670
Fax: 813−272−5758
Email: todds@hillsboroughcounty.org

MARK HERRON
MESSER CAPARELLO & SELF PA
2618 CENTENNIAL PL
TALLAHASSEE, FL 32308
850−222−0720
Fax: 850−224−4359
Email: mherron@lawfla.com

PATRICK SCOTT O'BRYANT
MESSER CAPARELLO & SELF PA
2618 CENTENNIAL PL
TALLAHASSEE, FL 32308
850−553−3469
Email: pobryant@lawfla.com

SUMMER DENAY BROWN
MESSER CAPARELLO & SELF PA
2618 CENTENNIAL PL
TALLAHASSEE, FL 32308
850−425−5209
Fax: 850−558−0657
Email: dbrown@lawfla.com

MICHAEL BENY VALDES
MIAMI−DADE COUNTY ATTORNEYS OFFICE
111 NW FIRST STREET SUITE 2810
MIAMI, FL 33128
305−375−5620
Fax: 305−375−5634

Email: michael.valdes@miamidade.gov

OREN ROSENTHAL
MIAMI−DADE COUNTY ATTORNEYS OFFICE
111 NW FIRST STREET SUITE 2810
MIAMI, FL 33128
305−375−2828
Fax: 305−375−5634
Email: orosent@miamidade.gov

ELIZABETH DESLOGE ELLIS
NABORS GIBLIN & NICKERSON PA
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850−224−4070
Email: eellis@ngnlaw.com

GREGORY THOMAS STEWART
NABORS GIBLIN & NICKERSON PA
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850−224−4070
Fax: 850−224−4073
Email: gstewart@ngn−tally.com

KIRSTEN H MOOD
NABORS GIBLIN & NICKERSON PA
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850−224−4070
Email: kmood@ngnlaw.com

NICHOLAS ARI SHANNIN
SHANNIN LAW FIRM PA
214 EAST LUCERNE CIRCLE SUITE 200
ORLANDO, FL 32801
407−985−2222
Email: nshannin@shanninlaw.com

ASHLEY DOLAN HOULIHAN
PALM BEACH COUNTY SUPERVISOR OF ELECTIONS

240 S MILITARY TRAIL
WEST PALM BEACH, FL 33416
321−412−5384
Email: ashleyhoulihan@pbcelections.org

JARED DOUGLAS KAHN
PINELLAS COUNTY ATTORNEYS OFFICE
315 COURT STREET
6TH FLOOR CLEARWATER, FL 33756
813−786−4034
Email: jkahn@co.pinellas.fl.us

KELLY LYNN VICARI
PINELLAS COUNTY ATTORNEYS OFFICE
315 COURT STREET
6TH FLOOR CLEARWATER, FL 33756
727−464−3354
Email: kvicari@pinellascounty.org

MORGAN RAY BENTLEY
BENTLEY & BRUNING PA
783 SOUTH ORANGE AVENUE SUITE 300
SARASOTA, FL 34236
941−556−9030
Email: mbentley@bentleyandbruning.com

LONDON LEE OTT
VOLUSIA COUNTY ATTORNEY
123 W INDIANA AVENUE
3RD FLOOR LEGAL DELAND, FL 32720
386−736−5950
Fax: 386−736−5990
Email: lott@volusia.org

WILLIAM KEVIN BLEDSOE
COUNTY OF VOLUSIA
123 WEST INDIANA AVENUE ROOM 301
DELAND, FL 32720
386−736−5950
Fax: 386−736−5990
Email: kbledsoe@volusia.org