No. 22-11133
(Consolidated Case Nos. 22-11143, 22-11144, 22-1145)

# In the United States Court of Appeals for the Eleventh Circuit

HARRIET TUBMAN FREEDOM FIGHTERS, CORP.,

*Plaintiff-Appellee,*

v.

LAUREL LEE, in her official capacity as Secretary of State of Florida, et al.,

*Defendants-Appellants,*

and

NATIONAL REPUBLICAN SENATORIAL
COMMITTEE AND REPUBLICAN NATIONAL
COMMITTEE,
*Intervenor-Defendants-Appellants*
.

## APPELLEES' RESPONSE TO APPELLANTS' MOTION FOR STAY PENDING APPEAL

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
NO. 4:21-CV-242-MW-MAF

Michelle Kanter Cohen*
Cecilia Aguilera*
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 450
Washington, DC 20006
*mkantercohen@fairelectionscenter.org*
*caguilera@fairelectionscenter.org*
Main: (202) 331-0114

Jack Genberg
Ga. Bar No. 144076
Bradley Heard*
SOUTHERN POVERTY LAW CENTER
150 E Ponce de Leon Ave.
Suite 340
Decatur, GA 30030
Main: (404) 521-6700
Fax: (404) 221-5857
*bradley.heard@splcenter.org*
*jack.genberg@splcenter.org*

Angela C. Vigil
BAKER & MCKENZIE LLP
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Main: (305) 789-8904
*angela.vigil@bakermckenzie.com*


*Attorneys for Plaintiff-Appellee*

*Motion for Admission to the
United States Court of Appeals for the
Eleventh Circuit Pending

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1.  Appellee states that it has no parent corporations, nor has it issued shares or debt securities to the public. The organization is not a subsidiary or affiliate of any publicly owned corporation, and no publicly held corporation holds ten percent of its stock.

2.  I hereby certify that the disclosure of interested parties submitted by Defendants-Appellants in their Motion for Stay Pending Appeal is complete and correct except for the following corrected interested persons or entities:

    a.  Emma Bellamy was withdrawn as Plaintiff's counsel and was terminated as counsel by the District Court in this action. She is no longer counsel for Plaintiff-Appellee.

    b.  Caren Short will be no longer be counsel at Southern Poverty Law Center and intends to shortly file a withdrawal motion as counsel for Plaintiff. She will no longer serve as counsel for Plaintiff-Appellee.

No. 22-11133
(Consolidated Case Nos. 22-11143, 22-11144, 22-1145)

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

HARRIET TUBMAN FREEDOM FIGHTERS, CORP.,

*Plaintiff-Appellee,*

**v.**

LAUREL LEE, in her official capacity as Secretary of State of Florida, et al.,

*Defendants-Appellants.*

APPELLEES' RESPONSE TO DEFENDANTS-APPELLANTS' MOTION
FOR STAY PENDING APPEAL

This action is about private organizations' right to be free from delivering government-drafted messages while engaged in core political speech. After an accelerated discovery schedule, the denial of summary judgment motions, and a two-week bench trial, the District Court found that Florida's new Registration Disclaimer Provision, requiring Plaintiff-Appellee Harriet Tubman Freedom Fighters to deliver a state-mandated message to potential voters with which it interacts violated its First Amendment right against compelled speech. The court enjoined this and other provisions of

1

2021 Florida Senate Bill 90 ("SB 90").  The court *sua sponte* declined to stay its order pending appeal.

After trial, the Florida Legislature passed a bill repealing the Registration Disclaimer. Fla. Senate Bill 524 (2022). The Registration Disclaimer Provision went into effect immediately upon SB 90's signing in May 2021, and remained in effect until the District Court entered its order on March 31, 2022. Nevertheless, after more than a month in which numerous other bills have been presented to the Governor, SB 524 has not yet been sent to him, nor is there any deadline for the legislature to do so.

In seeking a stay pending appeal, Defendants-Appellants have failed to make *any* arguments on the merits of Plaintiff-Appellee's compelled speech claim; had they done so, such arguments would still fail. Defendants-Appellants present no authority for the proposition that the mere potential that an unsigned bill could become law and thereby moot the Registration Disclaimer Provision required the District Court to wait indefinitely to rule on the merits, even though the Registration Disclaimer Provision is already in effect. Thus, the "exceptional" measure of a stay pending appeal is unwarranted.

## **BACKGROUND**

This is an appeal from the consolidated bench trial of four lawsuits challenging Florida's Senate Bill 90, an omnibus election law enacted in May 2021

2

that went into effect immediately upon signing. After a 14-day trial, the District Court entered a 288-page final order with findings of fact and conclusions of law. *See* Final Order Following Bench Trial, Ex. A to Time Sensitive Motion for Stay Pending Appeal (Apr. 11, 2022) (hereinafter "Op."). The District Court then entered separate judgments in each of the four cases. *See id.* at 285–89. Appellants—some, but not all, of the Defendants against which judgment was entered—filed a notice of appeal one week later. Notice of Appeal, ECF 264[1] (Apr. 7, 2022).

Harriet Tubman Freedom Fighters, Plaintiff-Appellee in this specific action, challenged on constitutional grounds a single provision of Senate Bill 90, the Registration Disclaimer Provision, codified at Fla. Stat. § 97.0575(3)(a). The judgment in its favor turned exclusively on its right to be free from compelled speech under the First Amendment. Appellants' Motion devotes barely a page to this claim and focuses largely on the District Court's ruling that several provisions of Senate Bill 90 intentionally discriminate against Black voters. Harriet Tubman Freedom Fighters did not bring such claims, and the judgment entered in its favor is separate from and does not rely on any race discrimination-related finding. Clerk's Judgment, ECF 263.

---

[1] Unless otherwise specified, ECF numbers refer to the docket in *Harriet Tubman Freedom Fighters v. Lee*, 4:21-CV-242 (N.D. Fla.), Plaintiff-Appellee's case below. The cases were consolidated for trial under *League of Women Voters v. Lee*, 4:21-CV-186 (N.D. Fla.).

**The Registration Disclaimer Provision**

The Registration Disclaimer Provision requires private groups who assist voter registration applicants with collecting and submitting their registration forms—known in Florida as third-party voter registration organizations (3PVROs)—to warn potential voters that the organization may not turn in their form on time, and to inform those potential voters of other ways to register to vote. Fla. Stat. § 97.0575(3)(a). The District Court held that the Registration Disclaimer Provision compels private organizations to engage in compelled speech in violation of the First Amendment. Op. 210–19.

The District Court subjected the Registration Disclaimer Provision to strict scrutiny because the Provision compels private speakers to deliver a government-drafted message. *Id.* at 204–19 (citing *NIFLA v. Becerra*, 138 S. Ct. 2361 (2018), and *McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022)). The District Court found that the Registration Disclaimer Provision could not survive strict scrutiny because it neither served a compelling interest nor was narrowly tailored. *See id.* at 215–17.

First, the District Court held that the state's asserted post-hoc interests in informing the public about the risks of registering with a private organization, and of available alternative registration methods, were not compelling. "[T]he simple interest in providing voters with additional relevant information does not justify a state requirement that a [speaker] make statements or disclosures she would

4

otherwise omit." Op. 210 (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995)) (second alteration in original). And the extensive factual record showed that "the chance that a [private organization] will return any particular voter's registration late is vanishingly small." *Id*. at 211. The District Court therefore found the required warning "misleading" because organizations "seldom submit applications late," and the warning "mislead[s] registrants into thinking it [is] likely." *Id.* at 209.

Second, the District Court held that the Registration Disclaimer Provision was not narrowly tailored because a less restrictive alternative was readily available: the State could "communicat[e] its message itself" by adding a warning to its voter registration form. *Id.* at 216 (citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988)).

Finally, the District Court ruled in the alternative that, even if exacting rather than strict scrutiny applied, the Registration Disclaimer Provision was still unconstitutional because it was not narrowly tailored to serve a sufficiently important government interest. *Id*. at 217–219.

Based on these findings, the District Court entered a declaratory judgment that the Registration Disclaimer Provision is unconstitutional and enjoined Defendants from enforcing it. *See* ECF 263.

## LEGAL STANDARD

A stay is "not a matter of right" but rather an "exercise of judicial discretion," and the "propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009). (citation omitted). Indeed, "[t]he grant of an emergency motion to stay the trial court's mandate is thus an exceptional response granted only upon a showing of four factors." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

Accordingly, a stay applicant must demonstrate each of the following four factors: (1) they have a strong likelihood of succeeding on the merits; (2) they will suffer an irreparable injury absent a stay; (3) the stay will not substantially injure other interested parties; and (4) the stay will not result in any harm to the public interest. *Nken*, 556 U.S. at 434; *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). The first two factors "are the most critical." *Nken*, 556 U.S. at 434. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. Defendants-Appellants fail to meet this burden.

## ARGUMENT

### I.    Defendants-Appellants Are Unlikely to Succeed on the Merits as to the Registration Disclaimer Provision

The most protected rights in America's constitutional framework are the rights to political expression and association. *See Dana's R.R. Supply v. Att'y Gen.,*

*Fla.*, 807 F.3d 1235, 1248 (11th Cir. 2015). The District Court was not required to wait to protect those rights simply based on speculation that a bill might be signed at some indefinite future time. Should this Court reach the merits of Plaintiff-Appellee's compelled speech claim, it should conclude that the District Court ruled correctly that the Registration Disclaimer Provision illegally compelled Plaintiff-Appellee's First-Amendment protected speech. Thus, Defendants-Appellants are unlikely to succeed in this appeal.

### a. Defendants-Appellants Make No Substantive Argument That They Are Likely to Succeed on Their Appeal.

Defendants-Appellants ignore the District Court's extensive, detailed factual findings as to the Registration Disclaimer Provision, and make no substantive argument that they are likely to succeed on the merits of Plaintiff's compelled speech claim. While they indicate they "disagree" with the District Court's conclusion that the Registration Disclaimer Provision violates the First Amendment, they provide no analysis and instead indicate that this Court "need not resolve that debate because the Florida legislature passed SB 524, which repeals it." Time Sensitive Motion for Stay Pending Appeal, 23 (Apr. 11, 2022) (hereinafter, "Mot."). Instead, Defendants-Appellants argue that the District Court should have abstained from ruling because two houses of the legislative body passed a bill that would have mooted the case if it had been signed into law by the governor before the District Court entered final judgment. *Id.* at 23–24.

7

This Court may properly conclude that, with respect to this motion, Defendants-Appellants have abandoned any arguments as to the District Court's substantive findings regarding the Registration Disclaimer Provision. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."). Defendants-Appellants' singular, conclusory statement that sets forth their disagreement with the District Court's order cannot satisfy the requirement that they have a strong likelihood to succeed on the merits of their appeal. Their motion should fail for that reason alone.

Defendants-Appellants' sole argument as to the first *Nken* factor is that the District Court should have waited for the Governor to sign SB 524.  It hinges entirely on speculation that the Florida Legislature will present Senate Bill 524 to the Governor and that the Governor will sign that bill. *See* Mot. 23–24. Defendants-Appellants cannot base their arguments for a stay on these unrealized future contingencies and cite no precedent for doing so.

After the conclusion of trial, but before issuing its opinion, the District Court asked the parties for briefing regarding SB 524's effect on the matters before it. *League of Women Voters of Fla. v. Lee*, 4:21-CV-186, ECF 659 (Mar. 21, 2022). Defendants had the opportunity argue that the District Court should hold its ruling. But they failed to make any argument then that the court should "hold this claim in

abeyance or enter a partial stay." Mot., 24. Instead, their filing clearly stated that until SB 524 was signed, it did not moot anything. *See League of Women Voters of Fla. v. Lee*, 4:21-cv-186 (N.D. Fla.), ECF 662 (Mar. 23, 2022). By failing to raise it then, Defendants-Appellants waived any argument that the District Court should have waited for the Governor to sign SB 524 before entering judgment on the Registration Disclaimer Provision. The Eleventh Circuit has consistently held that "an issue not raised in the District Court and raised for the first time in an appeal will not be considered by this court." *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (quoting *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991)).

Even if Defendants-Appellants were permitted to raise this argument now, it would be meritless. Defendants-Appellants rely on a footnote from this Court's decision in *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1271 n.24 (11th Cir. 2017) (en banc), *abrogated on other grounds by Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (noting that usual practice *after a case has become moot* is to vacate the judgment with instructions to dismiss) to argue that this Court will be prompted to vacate the District Court's order as it relates to the Registration Disclaimer Provision once Senate Bill 524 goes into effect and accordingly moots Appellees' claims.[2] But Defendants-Appellants did not cite, nor

---

[2] Appellants correctly note that the district court acknowledged the parties' agreement that Senate Bill 524 would moot Appellees' claims challenging the Registration Disclaimer Provision. Mot. 23.

could Plaintiff-Appellee locate, any precedent requiring the District Court to withhold judgment on a pending claim after trial because a bill that would have mooted the case if signed into law before final judgment had been passed by the legislature but *not* yet signed into law. If anything, the fact that the bill has *still* not been presented to the Governor only underscores that the District Court rightly concluded the case and controversy remained live and to proceed in issuing its judgment.

By relying solely on this argument with respect to the Registration Disclaimer Provision, Defendants-Appellants gloss over the sequence of events—or rather, lack thereof—after Senate Bill 524 was ordered enrolled on March 9, 2022, five days before the 2022 Legislative Session adjourned.[3]

Between Senate Bill 524's passage and the District Court's March 31, 2022 order, the Legislature had over three weeks to present it to the Governor.[4] It still has not as of this filing, though numerous other bills passed by the Legislature at the

---

[3] *CS/CS/SB 524: Election Administration*, THE FLA. SENATE, https://www.flsenate.gov/Session/Bill/2022/524 (last visited Apr. 21, 2022); *Senate Calendar*, THE FLA. SENATE (Mar. 14, 2022), https://www.flsenate.gov/Session/Calendar/2022/Daily%20Calendars%202022-03-14%20133456.PDF.

[4] By way of comparison, Senate Bill 90, at issue here, was enrolled on April 29, 2021, presented to the Governor on May 3, 2021, and signed into law on May 6, 2021. *SB 90 (2021)*, THE FLA. SENATE, https://www.flsenate.gov/Session/Bill/2021/90 (last visited Apr. 13, 2022).

same time or earlier have been presented and signed. [5] Indeed, Defendants-Appellants omit any indication that the Legislature has withheld Senate Bill 524 from the Governor's desk.

Notably, the Governor has signed at least 42 other bills presented to him — several of which were presented before the District Court's order issued. *See infra* Table 1. Importantly, 34 of these 42 bills were enrolled on or before the same day in which Senate Bill 524 was enrolled. *See id*.

**Table 1. Florida Bills Recently Signed into Law (2022 Legislative Session).**

| Bill No. | Enrolled | Presented |
|----------|----------|-----------|
| HB 255 | 3/4 | 4/5 |
| HB 459 | 3/8 | 3/28 |
| HB 469 | 3/10 | 4/5 |
| HB 539 | 3/9 | 4/5 |
| HB 543 | 3/4 | 4/5 |
| HB 593 | 3/8 | 3/28 |
| HB 631 | 3/2 | 3/28 |
| HB 817 | 3/2 | 4/5 |
| HB 855 | 3/9 | 3/28 |
| HB 893 | 3/2 | 4/5 |
| HB 921 | 3/10 | 4/5 |
| HB 925 | 3/2 | 3/28 |
| HB 963 | 3/10 | 4/5 |
| HB 1099 | 3/2 | 3/28 |
| HB 1209 | 3/11 | 4/5 |
| HB 1239 | 3/7 | 4/5 |
| HB 1249 | 3/4 | 4/5 |
| HB 1521 | 3/9 | 4/5 |
| HB 1523 | 3/9 | 4/5 |
| HB 1577 | 3/4 | 4/5 |

---

[5] *CS/CS/SB 524*, supra note 3.

11

| Bill No. | Enrolled | Presented |
|----------|----------|-----------|
| SB 236 | 3/8 | 3/29 |
| SB 292 | 3/10 | 4/5 |
| SB 312 | 3/11 | 4/5 |
| SB 534 | 3/4 | 4/5 |
| SB 544 | 3/8 | 4/5 |
| SB 566 | 3/7 | 4/5 |
| SB 632 | 3/8 | 4/5 |
| SB 704 | 3/7 | 4/5 |
| SB 926 | 3/4 | 4/5 |
| SB 934 | 3/7 | 3/29 |
| SB 988 | 3/10 | 4/5 |
| SB 1222 | 3/8 | 4/5 |
| SB 1262 | 3/8 | 4/5 |
| SB 1374 | 3/8 | 4/5 |
| SB 1552 | 3/4 | 3/29 |
| SB 1712 | 3/8 | 4/5 |
| SB 1770 | 3/8 | 4/5 |
| SB 1844 | 3/8 | 4/5 |
| SB 1950 | 3/11 | 4/5 |
| SB 7002 | 3/8 | 4/5 |
| SB 7008 | 3/4 | 4/5 |
| SB 7010 | 3/8 | 4/5 |

The District Court explicitly waited for the Legislature to move forward on the passed bill because of federalism concerns and its duty to avoid addressing constitutional issues unnecessarily. Op. 191. Yet even after the District Court directed the parties to file expedited supplemental briefing addressing what impact Senate Bill 524 would have on the challenged provisions here and the parties responded, the Legislature did not transmit Senate Bill 524. Without any indication of expediency in moving Senate Bill 524 forward, the District Court's decision to

12

enjoin the Registration Disclaimer Provision was necessary to prevent any further injuries to Plaintiff-Appellee's First Amendment rights, particularly because voter registration is ongoing as the 2022 primary and general elections approach.

Defendants-Appellants claim that "[t]he only thing stopping" the Governor from signing this bill "is the district court's preclearance order." Mot. 23. Their meaning is not precisely clear, but nothing in the district court's preclearance order prevents the Governor from signing Senate Bill 524.[6]

> **b. Defendants-Appellants are Unlikely to Succeed Because the District Court Correctly Found the Registration Disclaimer to Be Unlawful Compelled Speech Under the First Amendment.**
>
> 1. The Registration Disclaimer Provision Constitutes a Content-Based Regulation of Speech.

The "freedom of speech includes both the right to speak freely and the right to refrain from speaking at all." *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps.*, 138 S. Ct. 2448, 2463 (2018) (citation and internal quotation marks omitted). The government therefore cannot "compel affirmance of a belief with which the speaker disagrees." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995) (citation omitted). This rule "applies not only to expressions of

---

[6] The District Court's order prevents SB 524 from taking effect once signed, until precleared. Legislation is not eligible to be submitted for preclearance until it is actually enacted. *Cf.* 28 C.F.R. 51.27.

value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid." *Id.* at 573 (citations omitted).

Laws "compelling individuals to speak a particular message . . . alter the content of their speech." *Nat'l Inst. of Family & Life Advocates (NIFLA) v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (citation and alterations omitted). "When the government 'compel[s] speakers to utter or distribute speech bearing a particular message,' . . . such a policy imposes a content-based burden on speech and is subject to strict-scrutiny review." *McClendon v. Long*, 22 F.4th 1330, 1337–1338 (11th Cir. 2022) (alteration in original) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994)).

The Registration Disclaimer Provision compels 3PVROs, including Plaintiff-Appellee, to engage in forced speech. Op. 208–09 (holding that the "registration disclaimer requires Plaintiffs to deliver the government's message…"). This compelled speech is also misleading. *Id.* The government cannot "require speakers to affirm in one breath that which they deny in the next." *Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n of Calif.*, 475 U.S. 1, 16 (1986); *see also McClendon*, 22 F.4th at 1338.

Content-based restrictions on speech are subject to strict scrutiny:

> Content-based regulations target speech based on its communicative content. As a general matter, such laws are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to

14

> serve compelling state interests. This stringent standard
> reflects the fundamental principle that governments have
> no power to restrict expression because of its message, its
> ideas, its subject matter, or its content.

*NIFLA,* 138 S. Ct. at 2371 (internal citations and quotation marks omitted).""[E]ncouraging others to register to vote' is 'pure speech,' and, because that speech is political in nature, it is a 'core First Amendment activity.'" *League of Women Voters of Tenn. v. Hargett*, 400 F. Supp. 3d 706, 720 (M.D. Tenn. 2019) (quoting *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1158 (N.D. Fla. 2012)) (alteration in original). For example, the District Court found that Plaintiff-Appellee's voter registration discussion "engages skeptics in conversation about how, for example, voting can affect housing, their children's future, jobs, and crime in their communities." Op. 218. These conversations "bear on fundamental questions at the heart of the political system." *Id.* (quoting *Hargett*, 400 F. Supp. 3d at 724).

Because the Registration Disclaimer Provision is a content-based restriction on Plaintiff-Appellee's core political speech, it is subject to strict scrutiny. *See NIFLA,* 138 S. Ct. at 2371.

2.    The State's Asserted Interests in the Registration Disclaimer
Provision Are Not Compelling.

When assessing legislation under heightened scrutiny, courts look only to the *actual* motivations of the legislature. "The State must show that the alleged objective

was the legislature's '*actual* purpose'" to be considered a "compelling interest." *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996) (emphasis added) (citation omitted) Therefore only state interests that were contemporaneously identified by the Legislature are relevant to Plaintiff-Appellee's compelled speech claim.[7]

The legislative record was utterly devoid of evidence that supports *any* legitimate rationale offered for the Registration Disclaimer Provision, let alone a compelling interest to justify it. The District Court found the testimony offered by the Director of Elections, Maria Matthews, not to be credible with respect to the state's proffered interests. Op. at 213–15. The extensive factual record at trial showed that "the chance that a [private organization] will return any particular voter's registration late is vanishingly small." *Id* at 211. The District Court therefore found the required warning "misleading," because organizations "seldom submit applications late," and the warning "mislead[s] registrants into thinking it [is] likely." *Id.* at 209.

> 3.  The Registration Disclaimer Provision Is Not Narrowly Tailored to Achieve Any State Interest.

Assuming *arguendo* Defendants-Appellants had advanced a legitimate and compelling state interest, Florida has "more benign and narrowly tailored options" available to serve its interests. *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,

---

[7] Because this principle applies to "heightened" scrutiny, this is true even if this Court concluded that intermediate scrutiny applies here.

487 U.S. 781, 800 (1988). The government is *entirely free to speak for itself* and can "communicate the desired information to the public without burdening a speaker with unwanted speech during the course of a solicitation." *Id.*; *see also NIFLA*, 138 S. Ct. at 2376. The District Court found that Florida could instead—as the legislature did in SB 524—include the same information in the disclaimer on the state voter registration form as a less restrictive alternative. Op. at 216–17. Accordingly, the Registration Disclaimer Provision is not narrowly tailored to a compelling state interest.

> 4.    The District Court Correctly Reject Defendants-Appellants' Proffered Analogies to Mandatory Professional and Campaign Finance Disclosures.

The District Court correctly found that Plaintiffs-Appellees' 3PVRO activities are not commercial speech, Op. 204–05, and are not compelled disclosures akin to campaign finance regulation, *id.* at 207–209. Unlike such disclosures, the Registration Disclaimer Provision "does not require Plaintiffs to disclose anything about themselves." *Id.* at 208; *see also NIFLA*, 138 S. Ct. at 2372.

Instead, read holistically, the Registration Disclaimer Provision serves to dissuade potential voters from registering through a community organization: as in *NIFLA*, "the government's message goes against the speaker's mission because it suggests that government-provided alternatives to the speaker's services are

available." Op. 207.  The Registration Disclaimer Provision requires that 3PVROs provide the government's message, which is "no mere statement of fact." *Id.* at 209.

> ### 5.    Even Applying a Lower Level of Scrutiny, the Registration Disclaimer Provision Would Still be Invalid.

Even applying a lesser level of scrutiny, the Registration Disclaimer Provision would be invalid, as it is misleading, lacks even a legitimate interest, and is not narrowly tailored. *See* Op.  210–11, 215–17.

 Defendants-Appellants have failed to establish that they have a strong likelihood of prevailing on the merits of their appeal. For this reason alone, their Motion should be denied.

## II.    Defendants-Appellants Will Not Be Irreparably Harmed Absent a Stay.

Defendants-Appellants fail to demonstrate that they will be irreparably harmed absent a stay. They rely principally on *Purcell v. Gonzalez*, 549 U.S. 1 (2006), arguing that the "district court's order falls squarely within *Purcell*'s forbidden window." Mot. 28. Defendants-Appellants claim that Plaintiffs-Appellees "didn't move for preliminary injunctions or even summary judgment on all claims" and "chose to go to trial," *id.* at 29, yet they ignore critical procedural facts. Plaintiff-Appellee *did* move for summary judgment on November 12, 2021, on precisely the claim on which the court ruled in its favor after trial. *Harriet Tubman Freedom Fighters, Corp. v. Lee*, 4:21-cv-242 (N.D. Fla.), ECF 216.

Defendants-Appellants' claimed concern for expediency pursuant to *Purcell* is ironic given that they criticize the District Court for taking any action at all while the Legislature failed to advance SB 524 to the governor. As Defendants-Appellants would have it, it was simultaneously too late for Plaintiffs-Appellees to act and too early for the District Court to make a decision. They cannot have it both ways.

The Legislature had the opportunity to present SB 524 to the Governor even before trial concluded. Instead, it did not pass it until after trial, and then chose to delay even after the District Court entered an order for expedited briefing on the bill's effect on the case ten days before its final order. *League of Women Voters of Fla. v. Lee*, 4:21-cv-186, ECF 659 (Mar. 21, 2022).

Lastly, Defendants-Appellants curiously rely on an "in-chambers opinion," *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) (Rehnquist, J., in chambers), to support their argument that they will be irreparably harmed because the state cannot enforce an enjoined statute. Mot. 26. This argument must fail. *New Motor Vehicle Board. of California* does not support the claim that enjoining the enforcement of a law is an irreparable harm standing alone, without consideration of if and how the injunction prevents the state from satisfying a compelling interest. This would fly in the face of constitutional litigation. *See, e.g., See, e.g.*, *Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020) ("It is clear that neither the government nor the public has any legitimate interest in

enforcing an unconstitutional ordinance." (citing *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)).

Here, Defendants-Appellants have not even identified any potential harm that will result from failing to enforce the Registration Disclosure Provision, and the District Court— whose factual findings cannot be reversed unless they are clearly erroneous, *see* Fed. R. Civ. P. 52(a)(6)—expressly found that the risk that voter registrations will be turned in late is "vanishingly small," Op. 211.

In sum, Defendants-Appellants have no cognizable injury that would merit a stay here.

### III.    Plaintiff-Appellee Will be Substantially Injured by a Stay.

The District Court noted that while Plaintiff-Appellee's compelled speech claim challenging the Registration Disclaimer Provision would "likely become moot soon, it is not moot yet." Op. 191. While Plaintiff-Appellee's claims have not become moot, absent the District Court's injunction, Plaintiff-Appellee and other 3PVROs would otherwise remain subject to an unconstitutional provision that interferes with a private organization's chosen message with respect to its voter registration activities.

Staying the District Court's order would thus severely injure Plaintiff-Appellee by compelling it and other 3PVROs to engage in specific speech against their will when conducting voter registration activities. The District Court has

already determined, after extensive, detailed factual findings, that the Registration Disclaimer Provision violates Plaintiff-Appellee's First Amendment rights. "[I]t is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *KH Outdoor, e*, 458 F.3d at 1271–72 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

The Registration Disclaimer Provision compels Plaintiffs "to deliver [a] government-imposed, self-effacing message" Op. 209. Plaintiff-Appellee must provide a message it would not otherwise deliver to potential voters, requiring it to divert its resources to comply. *See id.* at 201–03. Having found Plaintiff-Appellee's witness representative credible, the District Court further found that, absent SB 90, Plaintiff-Appellee would spend its resources differently on voter education and training canvassers to persuade citizens to vote. *Id.* at 202. With no definitive timeline for SB 524's signature or implementation, if the District Court's injunction against compelled speech were stayed, Plaintiff-Appellee and other private organizations would be forced to comply with the Registration Disclaimer Provision.

Taking Defendants-Appellants' view that SB 524's signing is "imminent," a stay would not preserve the status quo, but would instead cause confusion by resulting in the re-implementation of the Registration Disclaimer Provision, only to have it ultimately repealed. In any event, any such stay would have to be granted on

the merits of Plaintiff-Appellee's compelled speech claim which Defendants-Appellants fail to address.

Ultimately, if SB 524 is signed, this provision will be eliminated. Such wild oscillation in voting rules is exactly what the Supreme Court recently counseled against in reviewing the contours of the *Purcell* principle. *See, e.g.*, *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (citations omitted).

For these reasons, Plaintiff-Appellee's critical First Amendment rights are at stake and will be violated if this Court grants a stay pending appeal.

## IV.   The Public Interest Is Not Served by a Stay.

In this Circuit, "the public interest is always served in promoting First Amendment values." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001); *see also League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1340 (S.D. Fla. 2006) ("Absent injunctive relief, the amount of First Amendment-protected political speech and activity will be reduced …."). Indeed, "allowing responsible organizations to conduct voter-registration drives—thus making it easier for citizens to register and vote—promotes democracy." *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012). Continuing to subject Plaintiff-Appellee and other private organizations to an unconstitutional provision that violates their First Amendment rights does not serve democracy.

22

Here, if Defendants-Appellants' Motion for a stay is granted, the unconstitutional Registration Disclaimer Provision will be re-implemented and registration groups will again be forced to undermine their own voter registration outreach and goals through conveying a government-drafted message. Time spent on the disclaimer will reduce the number of voters 3PVROs can help register. Op. 202. A stay would compel 3PVROs to continue to engage in misleading speech against their will when engaging in voter registration activities with potential voters. These consequences would unquestionably harm the public interest. *See Jones v. Gov. of Fla.*, 950 F.3d 795, 829 (11th Cir. 2020) (noting that the public interest "favors permitting as many qualified voters to vote as possible") (citing *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012))).

Moreover, the District Court's invalidation of the Registration Disclaimer Provision does not violate *Purcell*. Nothing in the record, nor any argument in the Motion, suggests that the inability to enforce the Registration Disclaimer Provision while an appeal is pending will in any way impair Florida election administration at either the state or local level. And as noted above, granting this Motion will only confuse voters. Thus, *Purcell* provides no justification to stay the judgment secured by Plaintiff-Appellee, let alone an independent ground for doing so.

Defendants-Appellants improperly aim to replace the District Court's credibility judgment, seeking to discredit the testimony of two Supervisors of

23

Elections who testified that their work would not be impacted should the Registration Disclaimer Provision be enjoined. *See* Mot. 17, 30. But this Court must give "due regard"   to   "the opportunity of   the trial court to judge"   the "credibility of witnesses." *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1301 (11th Cir. 2020) (quoting Fed. R. Civ. P. 52(a)). The Supervisors explained that "on the whole, enjoining the challenged provisions would not have undue collateral effects on their preparation for the 2022 election." Op. 267–68. Importantly, Supervisor White (Miami-Dade) affirmed her work would not be impacted should the Registration Disclaimer Provision be enjoined, *see id.*, despite that Defendants-Appellants highlight recent elections in Miami-Dade. *See* Mot. 28.[8]

This testimony is consistent with the Registration Disclaimer Provision itself. It requires 3PVROs to relay the disclaimer's contents, but does not regulate Supervisors of Elections. As the District Court explained, while the state can convey this information through its written communications, Op. 216, it cannot force private citizens advocating for political participation in their communities to convey that message on the state's behalf, *id.* at 209.

---

[8] Defendants-Appellants highlight Miami-Dade in their Motion as conducting recent elections that ended on April 5 and April 12. Mot. 28.

## **CONCLUSION**

Defendants-Appellants' Motion for Stay Pending Appeal should be denied.

DATED: April 21, 2022          Respectfully submitted,

*/s/ Jack Genberg*
Jack Genberg
Ga. Bar No. 144076
Bradley Heard*
Ga. Bar No. 342209
SOUTHERN POVERTY LAW CENTER
150 E Ponce de Leon Ave.
Suite 340
Decatur, GA 30030
Main: (404) 521-6700
Fax: (404) 221-5857
*bradley.heard@splcenter.org*
*jack.genberg@splcenter.org*

Michelle Kanter Cohen*
D.C. Bar No. 989164
Massachusetts Bar No. 672792 (inactive)
Cecilia Aguilera*
D.C. Bar No. 1617884
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 450
Washington, DC 20006
*mkantercohen@fairelectionscenter.org*
*caguilera@fairelectionscenter.org*
Phone: (202) 331-0114

Angela C. Vigil
BAKER & MCKENZIE LLP
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
(305) 789-8904
*angela.vigil@bakermckenzie.com*

*Attorneys for Plaintiff-Appellee*

*Application for Admission to the United States Court of Appeals for the Eleventh Circuit Pending

# CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2022, a true and correct copy of the foregoing document was served upon counsel for Defendants-Appellants, including those listed below, by filing it in this Court's CM/ECF system.

| | |
|---|---|
| Mohammad O. Jazil<br>Gary V. Perko<br>HOLTZMAN VOGEL BARAN<br>TORCHINSKY & JOSEFIAK PLLC<br>119 South Monroe Street, Suite 500<br>Tallahassee, FL 32301<br>Main: (850) 274-1690<br>Fax (540) 341-8809 (fax)<br>mjazil@holtzmanvogel.com<br>gperko@holtzmanvogel.com | Bradley R. McVay<br>Ashley E. Davis<br>Colleen E. O'Brien<br>William Chappel<br>FLORIDA DEPARTMENT OF STATE<br>R.A. Gray Building Suite 100<br>500 South Bronough Street<br>Tallahassee, Florida 32399-0250<br>Main: (850) 245-6536<br>Fax: (850) 245-6127 (fax)<br>brad.mcvay@dos.myflorida.com<br>ashley.davis@dos.myflorida.com<br>colleen.obrien@dos.myflorida.com<br>David.chappell@dos.myflorida.com |
| Phillip M. Gordon<br>HOLTZMAN VOGEL BARAN<br>TORCHINSKY & JOSEFIAK PLLC<br>15405 John Marshall Hwy<br>Haymarket, VA 20169<br>(540) 341-8808 / (540) 341-8809 (fax)<br>pgordon@holtzmanvogel.com | |

*Attorneys for Defendants-Appellants*

April 21, 2022

/s/ *Jack Genberg*
Jack Genberg

*Attorney for Plaintiff-Appellee*

1

## CERTIFICATE OF COMPLIANCE

1.      I hereby certify that the foregoing Response to Appellants' Motion for a Stay Pending Appeal complies with the type-volume and word-count limits of Federal Rule of Appellate Procedure 27(d) and Eleventh Circuit Rule 27-1 because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,198 words.

2.      I hereby certify that the foregoing Response to Appellants' Motion for a Stay Pending Appeal complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated:      April 21, 2022              /s/ *Jack Genberg*
                                        Jack Genberg

                                        *Attorney for Plaintiff-Appellee*